UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ALEXANDREW SCOT VAIL,<br><br>    Plaintiff<br><br>v.<br><br>DARIN BALAAM,<br><br>    Defendants | Case No.: 3:21-cv-00410-MMD-CSD<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 44 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion for summary judgment. (ECF Nos. 44, 44-1 to 44-16.) Plaintiff filed a response. (ECF No. 48.) Defendants filed a reply. (ECF No. 49.)[1]

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. However, the events giving rise to this action took place while Plaintiff was a pretrial detainee in the custody of the Washoe County Detention Facility (WCDF). (Am. Compl., ECF No. 8.)

The court screened Plaintiff's amended complaint and allowed him to proceed with a Fourteenth Amendment claim against defendants Balaam, Barrett-Venn and Kyler, related to

---

[1] Plaintiff moved to strike the reply as untimely (ECF No. 50), but the undersigned has issued a separate order denying that motion.

alleged conditions of confinement while he was in a segregated housing unit (SHU) (also referred to as Administrative Status or "Ad-Stat") due to his status as a validated member of the Norteño gang. He claims that during his time in Ad-Stat, he was subjected to a variety of restrictive conditions. The court found at least some of the conditions Plaintiff identifies appear excessive in relation to the non-punitive purposes assigned to them. (Screening Order, ECF No. 9.)

He was also allowed to proceed with an equal protection claim against Balaam based on allegations that as a Norteño, he was treated differently from a similarly situated group—the Sureños—without any rational basis. He alleges the Norteños and Sureños are similarly situated because both are Hispanic gangs that allegedly participate in gang activities, including fighting. Despite these similarities, he alleges that Balaam enforced a policy permitting Sureños to receive more favorable treatment than the Norteños. For example, unlike the Norteños—who were automatically sent to the SHU upon arrival at WCDF—Sureños were placed in the SHU only after being "individually assessed [and] sanctioned." In addition, unlike the Norteños—who were limited to non-working units where only a small number of jobs were available—the Sureños resided in every working unit and privileged dormitory in WCDF. (*Id.*)

Defendants move for summary judgment, arguing: Plaintiff was not subjected to unconstitutional conditions of confinement; there was no equal protection violation; and Defendants are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

*v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went

3

uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Defendants' Answer**

Preliminarily, Plaintiff argues that Defendants should be procedurally barred from asserting the arguments raised in their motion for summary judgment because their answer did

not include an affirmative defense that the conditions of confinement to which Plaintiff was subjected were constitutional.

It is sufficient that Defendants included a denial of the allegations in Plaintiff's complaint in their answer. Therefore, Plaintiff's request that Defendants be barred from asserting the argument that the conditions of confinement did not violate the constitution should be denied.

**B. Fourteenth Amendment Conditions of Confinement**

**1. Standard**

"Inmates who sue prison officials for injuries suffered while in custody may do so … if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). A pretrial detainee may be subject to "the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id*. at 536-37; *see also Vazquez v. Kern,* 949 F.3d 1153, 1163 (9th Cir. 2020); *Olivier v. Baca*, 913 F.3d 852, 857-58 (9th Cir. 2019) (citation omitted).[2] The inquiry into whether governmental conduct faced by a pretrial detainee amounts to punishment is an objective one. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018); *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

The "focus on 'punishment' does not mean that proof of intent (or motive) to punish is required for a pretrial detainee to prevail on a claim that his due process rights were violated." *Kingsley*, 576 U.S. at 398. Instead, "[a] pretrial detainee can prevail by providing only objective

---

[2] Claims of convicted prisoners, on the other hand, are governed by the Eighth Amendment's bar against cruel and unusual punishment. *See Norbert v. City and Cnty. of San Francisco*, 10 F.4th 918, 928 (9th Cir. 2021) (citation omitted).

5

evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id*. (citations omitted).

Whether the defendant's conduct was objectively unreasonable "will necessarily turn[ ] on the facts and circumstances of [the] particular case." *Castro*, 833 F.3d at 1071 (citation and quotation marks omitted); *Gordon*, 888 F.3d at 1125. The plaintiff must "prove more than negligence but less that subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

"[F]or a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." *Norbert*, 10 F.4th at 928 (citation and quotation marks omitted). "[C]ourts have rejected constitutional claims when the plaintiffs did not demonstrate sufficiently serious harm from the allegedly unconstitutional conditions of confinement." *Norbert*, 10 F.4th at 935.

"[T]o constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Vazquez*, 949 F.3d at 1163 (citation and quotation marks omitted). A condition does not constitute punishment if it "is reasonably related to a legitimate governmental objective." *Bell*, 441 U.S. at 539. If the condition, however, "is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment that may not constitutionally be inflicted on detainees." *Id*.

**2. Analysis**

In his amended complaint, Plaintiff references the following conditions of confinement that he claims amount to punishment: he is only allowed out of his cell one hour per day, five

days a week; the yard did not have access to sunlight; the extremely bright, fluorescent lights were never turned off; mentally ill inmates in the SHU were frequently screaming and banging on the walls; he could only purchase select hygiene and stationery items from the canteen; he was limited to a bible, one religious book, one recreational book and a dictionary; he only had one 20-minute visit per week; he was prohibited from engaging in educational, religious, and rehabilitative programming; he did not have access to jobs; he had limited access to the library; and he must be fully restrained in belly chains before exiting the unit.

Defendants contend the conditions, other than the cell lighting, "are privileges outside the realm of what is protected by the *Eighth Amendment*." (ECF No. 44 at 10:22-23, emphasis added.)

As discussed above, a pretrial detainee's claim concerning the conditions of confinement in detention is governed by the *Fourteenth Amendment* and may not amount to punishment under an objective framework. The fact that a particular condition may not violate the *Eighth Amendment* is not dispositive of whether it constitutes punishment under the *Fourteenth Amendment*. "[T]he Fourteenth Amendment is more protective than the Eighth Amendment because the Fourteenth Amendment prohibits *all* punishment of *pretrial detainees*, while the Eighth Amendment only prevents the imposition of *cruel and unusual punishment* of *convicted prisoners*." *Vazquez*, 949 F.3d at 1163-64 (quotation marks and citation omitted, alteration original).

Defendants do not cite authority to support their contention that each of the conditions at issue here (other than the constant illumination) does not violate the *Fourteenth Amendment*. Instead, Defendants only rely on *Farmer v. Brennan*, 511 U.S. 825 (1994). *Farmer* involved an Eighth Amendment claim by a convicted prisoner that prison officials were deliberately

indifferent to his safety when he, as a transgender inmate, was transferred to another facility and placed in general population, and was beaten and raped by another inmate. First, the Eighth Amendment, as applied to convicted prisoners, involves both an objective and subjective inquiry, while the Fourteenth Amendment, as applied to pretrial detainees, involves only an objective inquiry. Second, the particular condition at issue in *Farmer*—the inmate's safety from other inmates—is not one of the conditions at issue here. Therefore, *Farmer* is not dispositive of Plaintiff's Fourteenth Amendment conditions of confinement claim.

Defendants briefly state that Plaintiff was provided with commissary access for basic personal hygiene items, visitation once a week, library access (one personal book at a time), and access to the chaplain for religious needs, and assert there is no evidence these restrictions are intended to punish, but instead, they are intended to provide inmates with basic needs while ensuring the safety and security of the facility. They fail to provide any authority that these conditions are not violative of the Fourteenth Amendment. As discussed above, is not necessary to demonstrate an intent or motive to punish. Instead, Defendants must provide *evidence* that these conditions were imposed in connection with *legitimate government purposes*, which they have not done.

The court will address the constant illumination condition separately, but as to the other alleged conditions of Plaintiff's confinement, Defendants have not met their burden of demonstrating they are entitled to summary judgment.

The Ninth Circuit has held that constant illumination can satisfy the objective component of the Eighth Amendment deliberate indifference inquiry. *See Grenning v. Miller-Stout*, 739 F.3d 1235 (9th Cir. 2014); *Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996); *Chappell v. Mandeville*, 706 F.3d 1052 (9th Cir. 2013). Therefore, it can also satisfy the objective standard for a pretrial

detainee's claim that his Fourteenth Amendment rights have been violated. In the Eighth Amendment context, the Ninth Circuit has acknowledged that it has taken into account "legitimate penological interests when considering allegations that continuous lighting" violated the inmate's constitutional rights. *Id*. A Fourteenth Amendment claim may likewise take into account whether the condition at issue is reasonably related to a legitimate governmental interest. *See Bell*, 441 U.S. at 539

According to Barrett-Venn, the Norteño gang is the most dangerous and problematic gang for staff to deal with at WCDF, and its members were engaged in fighting and other gang activity. Cell lighting is controlled at the deputy station, and each cell has two light settings, one of which is dimmer than the other. Most of the time, the cell lighting is set to the dimmer of the two settings, as the inmates have stated that the higher setting is too bright. In the Ad-Stat unit, where Plaintiff was housed, the lights are left on the dim setting to allow deputies to observe the inmates in their cells at all times to ensure the safety and security of the inmates and the facility. (Barrett-Venn Decl., ECF No. 44-15 ¶ 13.)

In addition, Defendants argue there is no evidence Plaintiff suffered any harm as a result of the lights being on in his cell.

Plaintiff's response does not contain any argument or evidence in order to create a genuine dispute of material fact as to whether the constant illumination in his cell violated his rights under the Fourteenth Amendment. Therefore, summary judgment should be granted in Defendants' favor only as to this aspect of Plaintiff's Fourteenth Amendment conditions of confinement claim.

///

///

**C. Equal Protection**

The Fourteenth Amendment prohibits the denial of "the equal protection of the laws." U.S. Const. amend XIV, § 1. This "is essentially a direction that all persons similarly situated should be treated alike." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Different standards of scrutiny apply depending on what type of discrimination is occurring.

Plaintiff's claim is not focused on discrimination based on race. Instead, he alleges that he is a member of the Norteños, and was treated differently (*i.e.* treated less favorably) from the Sureños —which he claims is a similarly situated group also comprised of Hispanic members— without any rational basis.

Where state action does not implicate a protected class, as is the case here, a plaintiff can establish a "'class of one" equal protection claim by demonstrating that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The plaintiff must demonstrate he was discriminated against "intentionally," rather than accidentally or randomly. *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008); *see also Ruiz v. Clark*, 2020 WL 9934485 (E.D. Cal. Sept. 2, 2020) (citation omitted) ("Discrimination based upon membership in a prison gang does not trigger heightened scrutiny under the Equal Protection Clause.").

Defendants present evidence that prior to February 2019, all active Norteños were housed in Housing Unit 8 (GP). The inactive Norteños who refused to participate in gang activities were housed in Ad-Stat, a form of segregated housing within WCDF, due to the threat of violent reprisal from the active Norteños.

In February 2019, there was a large amount of Norteño gang activity in Housing Unit 8. As a result, in March 2019, a decision was made to remove those Norteños who were actively participating in gang activities from GP and place them in Ad-Stat in Housing Unit 17. This was done in an attempt to stop the gang activity which had led to violence within WCDF. Conversely, the inactive Norteño gang members who were not participating in gang activities were moved from Ad-Stat to GP. There was a significant reduction in fights and gang activity among the Norteño inmate population following the placement of the active Norteños in Ad-Stat.

In November 2019, WCDF experienced a high amount of Sureño gang activity. Like the Norteños, the Sureños participating in gang activity were placed into Ad-Stat. This similarly resulted in a reduction of gang activity among the Sureño inmates at WCDF.

Plaintiff arrived at WCDF in September 2020. (ECF No. 44-3.) He was validated as a Norteño, which he does not dispute. (ECF No. 44-2.) Nor does he dispute that he would not affirm that he refrain from participating in gang activities. After being validated as a Norteño, he was initially housed in Housing Unit 4, and was then placed with the active Norteños in Housing Unit 17 in Ad-Stat. All inmates in Ad-Stat lived under the same conditions. (ECF Nos. 44-2; 44-3; 44-4; 44-5; 44-12 at 3; 44-14 at 8-9; Barrett-Venn Decl., ECF No. 44-15.)

Plaintiff does not provide evidence to dispute that *active* Norteños and Sureños were placed into Ad-Stat and faced the same conditions of confinement, while those who were inactive, or affirmed they refused to participate in gang activities, could live in GP. In fact, in response to Defendants' equal protection argument, Plaintiff merely states, "I'll get out of the way of Defendants motion on the equal protection violations inside Defendants facility." (ECF No. 48 at 12.) Therefore, to the extent active Norteños and Sureños can be considered similarly

situated, Plaintiff has not raised a genuine dispute of material fact as to whether they were intentionally treated differently.

Therefore, summary judgment should be granted in favor of defendant Balaam as to the equal protection claim.

**D. Qualified Immunity**

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). In determining whether a defendant is entitled to qualified immunity, the court considers "whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citations omitted).

The court need only consider Defendants' qualified immunity argument with respect to the Fourteenth Amendment conditions of confinement claim (other than regarding the constant illumination).

First, Defendants argue that they entitled to qualified immunity because the conditions of confinement did not rise to the level of a constitutional violation. However, as was discussed above, Defendants' argument is flawed because they rely only on the *Eighth* Amendment, and not the more protective *Fourteenth* Amendment that governs a conditions of confinement claim brought by a pretrial detainee.

Second, Defendants contend that no clearly established law would have placed a reasonable officer on notice that their conduct was unlawful. However, their argument is only

focused on the action of placing the Norteños in Ad-Stat due in response to gang activities to protect inmates and staff within the facility. The argument in no way focuses on the conditions Plaintiff faced when he was placed in Ad-Stat. As such, Defendants are not entitled to qualified immunity as to the remaining Fourteenth Amendment conditions of confinement claim.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING IN PART AND DENYING IN PART** Defendants' motion for summary judgment (ECF No. 44) as follows:

(1) **DENYING** Plaintiff's request that Defendants be procedurally barred from asserting the argument that the conditions Plaintiff faced did not violate the Constitution;

(2) **GRANTING** Defendants' motion for summary judgment insofar as Plaintiff claims that the constant illumination in his cell violated his rights under the Fourteenth Amendment, but otherwise **DENYING** Defendants' motion as to the Fourteenth Amendment conditions of confinement claim; and

(3) **GRANTING** the motion for summary judgment as to the equal protection claim against defendant Balaam.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: October 10, 2023

_____
Craig S. Denney
United States Magistrate Judge